UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                        :

In re Vale S.A. Securities Litigation    :

                                                        :    No. 15 Civ. 9539 (GHW)

                                                        :    <u>**ORAL ARGUMENT REQUESTED**</u>

------------------------------------------------------------x

## DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

GIBSON, DUNN & CRUTCHER LLP

Randy M. Mastro
Mark A. Kirsch
Christopher M. Joralemon
Mary Beth Maloney
David M. Kusnetz

200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants Vale S.A., Luciano Siani Pires, and Gerd Peter Poppinga*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ................................................................................................... 2

DISCUSSION ............................................................................................................................... 2

    I.    THE SWORN TESTIMONY OF THE SOLE INVESTMENT ANALYST COVERING VALE FOR LEAD PLAINTIFFS' PORTFOLIO MANAGER CONFIRMS THAT LEAD PLAINTIFFS CANNOT SATISFY RULE 23(A) ....................................................................................... 2

    II.    UNDISPUTED EXPERT EVIDENCE—INCLUDING FROM PLAINTIFFS' OWN EXPERT—CONFIRMS THAT PLAINTIFFS HAVE FAILED TO MEET THE REQUIREMENTS OF RULE 23(B)(3) .......... 6

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)......................................................................................................2

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)............................................................................................................4, 6

*Blank v. Jacobs*,
   2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) .......................................................................3

*Bowling v. Johnson & Johnson*,
   2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019).....................................................................3, 6

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ............................................................................................6

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
   281 F.R.D. 174 (S.D.N.Y. 2012) ...............................................................................6, 7, 9, 10

*GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*,
   838 F.3d 214 (2d Cir. 2016)................................................................................................4, 5

*George v. China Auto. Sys., Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ..................................................................2, 6, 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)............................................................................................................4, 6

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)......................................................................8, 9

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................................................2, 3

*In re Vivendi Universal, S.A. Sec. Litig.*,
   123 F. Supp. 3d 424 (S.D.N.Y. 2015)..................................................................................4, 6

*In re Vivendi Universal, S.A. Sec. Litig.*,
   183 F. Supp. 3d 458 (S.D.N.Y. 2016)......................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................1, 2, 3

Fed. R. Civ. P. 23(b) ...................................................................................................1, 2, 6

Pursuant to the Court's August 8, 2019 Order (Dkt. No. 164), Defendants respectfully submit this sur-reply memorandum of law in further opposition to Lead Plaintiffs' motion for class certification and appointment of class representatives and class counsel (the "Motion").[1]

**PRELIMINARY STATEMENT**

From the outset of this ill-conceived litigation, the fact that the November 5, 2015 collapse of the Fundão Dam[2] impacted many communities has not been in dispute. However, Plaintiffs here—and, in particular, *Lead Plaintiffs*—are not among them. Indeed, Lead Plaintiffs, purportedly acting on behalf of a class of U.S. stock market participants who purchased Vale's American Depositary Receipts ("ADRs"), are seeking to parlay a terrible mining accident in Brazil into a lucrative payoff by alleging an illusory fraud and phantom investment losses.

The Court curbed Plaintiffs' ruse by rejecting the vast majority of their claims and theories of wrongdoing at the motion to dismiss stage. *See* March 23, 2017 Order (Dkt. 92). Now, undisputed evidence developed during fact and expert discovery compels the Court's denial of Lead Plaintiffs' Motion, finally bringing this putative class action to its just conclusion. As set forth in more detail below: (1) the sworn testimony of the sole investment analyst covering Vale for Lead Plaintiffs' portfolio manager forecloses Lead Plaintiffs from satisfying Rule 23(a) of the Federal Rules of Civil Procedure because they are neither typical nor adequate class representatives; and (2) Plaintiffs' *own* loss causation/damages expert confirms that Plaintiffs have failed to demonstrate Vale's securities traded in an efficient market during the proposed class period, thus precluding Plaintiffs from satisfying the predominance requirements of Rule 23(b). For each—or *either*—of the foregoing reasons, as well as the reasons set forth in

---

[1] All abbreviated and defined terms herein are consistent with those set forth in Defendants' Opposition to the Motion ("Opposition" or "Opp.") (Dkt. No. 147).
[2] The Fundão Dam was located in Minas Gerais, Brazil, and owned and operated by non-party Samarco Mineração S.A.

1

Defendants' Opposition, Defendants respectfully request that the Court deny Lead Plaintiffs' Motion for Class Certification.

## RELEVANT BACKGROUND

This entire putative class action rests on a single alleged claim under Section 10(b) of the Exchange Act premised on two narrow categories of purported misstatements: (1) eight non-specific snippets regarding "risk mitigation" lifted from among the 174 pages of Vale's 2013 Sustainability Report (the "Sustainability Report Excerpts"); and (2) a single statement made by Vale's Chief Financial Officer, Luciano Siani Pires, during a November 16, 2015 conference call with analysts in response to a question about how "the relationship between Vale and BHP and Samarco" is "affected by potential anti-trust issues" (the "Antitrust Response"). *See* Opp. at 1.

## DISCUSSION

Lead Plaintiffs "must prove by a preponderance of the evidence that [their] proposed class meets the requirements of Rule 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Rule 23(b)." *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *3 (S.D.N.Y. July 3, 2013). "While it is certainly true that many motions for class certification meet the requirements of Rule 23, it is also true that there are those that do not. This is one that does not." *Id.* at *1.

**I.  THE SWORN TESTIMONY OF THE SOLE INVESTMENT ANALYST COVERING VALE FOR LEAD PLAINTIFFS' PORTFOLIO MANAGER CONFIRMS THAT LEAD PLAINTIFFS CANNOT SATISFY RULE 23(A)**

"'[W]here a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,' certification for the class is improper because he or she can no longer act in the best interest of the class." *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). A lead plaintiff "who is subject to an arguable defense of non-reliance on the

2

market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)." *Id.* at 136 (citation omitted). "The Court need not resolve whether a unique defense would ultimately succeed on the merits; rather, certification must be refused if the Court is 'confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff.'" *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019) (citation omitted).

Here, Bruno Rodrigues' sworn testimony makes it abundantly clear that Lead Plaintiffs are subject to the unique defense of non-reliance on the two alleged misstatements remaining in this case.[3] *See* Ex. A.[4] Throughout the entire proposed class period, Capital International Investors ("CII"), an external investment advisor, was responsible for managing Lead Plaintiffs' investment portfolios, *including all transactions involving Vale ADRs*. Mr. Rodrigues is an investment analyst employed by CII, a division of Capital Group, and was the sole analyst responsible for researching Vale and making corresponding investment recommendations for client portfolios (including those of Lead Plaintiffs). *Id.* at 23:13–19, 25:24–26:3.

Two days before Defendants filed their Opposition on November 3, 2017, Capital Group completed its production of documents in response to Defendants' subpoena. Included in this production were internal research notes and reports from Mr. Rodrigues. As highlighted in Defendants' Opposition, Mr. Rodrigues' research notes and reports showed that CII—again, which had complete control over Lead Plaintiffs' investments in Vale ADRs—continued to view Vale as a "high conviction buy idea" even after the accident at Samarco's Fundão Dam and the

---

[3] Courts within this Circuit also have held "that a unique defense could arise if the plaintiff was 'relying not on the market, but on his own assessment of the value of the stock.'" *Blank v. Jacobs*, 2009 WL 3233037, at *5 (E.D.N.Y. Sept. 30, 2009) (quoting *Rocco*, 245 F.R.D. at 135). Here, Mr. Rodrigues testified: "I don't rely on the market price" when making an assessment of the intrinsic value of a company. Ex. A (Deposition transcript of Bruno Rodrigues) at 35:17–22.

[4] Citations to "Ex. __" are to the accompanying Declaration of Christopher M. Joralemon.

3

other purported "corrective disclosures." Opp. at 10–12. According to Lead Plaintiffs, however, Mr. Rodrigues' "views – reflected in three cherry-picked reports – either support or have nothing to do with any of the claims in this action." *See* Lead Plaintiffs' Reply in Further Support of the Motion ("Reply") (Dkt. No. 124) at 4. Lead Plaintiffs could not have been more wrong.

On January 25, 2019, Mr. Rodrigues provided sworn deposition testimony in this matter that not only forecloses certification of the proposed class, it also refutes Lead Plaintiffs' entire case. With respect to the Sustainability Report Excerpts, Mr. Rodrigues testified that he was entirely indifferent to the alleged misstatements. As for the Antitrust Response, Mr. Rodrigues testified that Mr. Pires' purported misrepresentation actually was an accurate description of the relationship between Vale and Samarco. In short, Mr. Rodrigues' testimony confirms that Lead Plaintiffs simply did not rely in any way on the Sustainability Report Excerpts or the Antitrust Response when making investment decisions involving Vale securities.

The fraud-on-the-market presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) can be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price[.]" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (quoting *Basic*, 485 U.S. at 248). Courts within the Second Circuit have found that the presumption of reliance was rebutted where evidence—including deposition testimony of investment analysts—showed that a plaintiff would have purchased or sold a defendant's securities irrespective of a defendant's alleged fraud. *See, e.g.*, *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 218–23 (2d Cir. 2016); *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 435–38 (S.D.N.Y. 2015) ("*Vivendi* I"); *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 466–67 (S.D.N.Y. 2016) ("*Vivendi* II").

4

In *GAMCO*, the Second Circuit upheld the district court's finding that the presumption of reliance was rebutted where evidence showed that GAMCO would have purchased Vivendi's securities "even if aware of Vivendi's liquidity problems and its concealment of those problems." *GAMCO*, 838 F.3d at 220. This evidence included deposition testimony from the investment "analyst primarily responsible for calculating Vivendi's [Private Market Value]," who "testified that, once he learned of the liquidity crisis at Vivendi (as the fraud came to light), the knowledge of the liquidity problems had no 'impact [on his] PMV calculation.'" *Id*.

Mr. Rodrigues' testimony presents an even stronger case than *GAMCO* for rebutting the presumption of reliance. Much like the *GAMCO* analyst, Mr. Rodrigues was the "sole research analyst within . . . CII responsible for Vale." Ex. A at 25:24–26:3. With respect to the Sustainability Report Excerpts, Mr. Rodrigues testified that even if he "knew that the Fundão Dam was going to collapse and cause the worst environmental disaster in Brazil's history," he still would have recommended that clients invest in Vale. *See* Ex. A 195:18–196:23;[5] *cf. GAMCO,* 838 F.3d at 223 ("GAMCO, had it known of the liquidity problems at Vivendi, would have made the choice to buy the same securities it purchased."). Further, the Excerpts were *immaterial* to Mr. Rodrigues' assessment of Vale, and indeed, he *never even read* Vale's 2013 Sustainability Report, let alone relied on any representations in it when making Vale investment recommendations for the benefit of clients such as Lead Plaintiffs. *See* Ex. A 99:24–100:10 ("I don't think I ever reviewed [a Vale Sustainability Report]" because "I go after what is material to the . . . investment case").

---

[5] Mr. Rodrigues repeatedly explained that he was entirely unconcerned with Samarco (much less a single Samarco dam). *See id.* at 123:13–17 (Q. "[T]hroughout the relevant period, that is 2014-2015, Samarco was immaterial to your investment thesis on Vale. Correct?" A. "That's correct.").

5

As for the Antitrust Response, Mr. Rodrigues testified that Mr. Pires' purported misrepresentation actually was an accurate description of the relationship between Vale and Samarco, and that he *agreed* with Mr. Pires' characterization of Vale and Samarco as "completely independent." *Id.* at 82:5–8; 125:13–127:19. Mr. Rodrigues, moreover, did not believe there to be any subsequent "corrective disclosures" to the market concerning the Antitrust Response. *See id.* at 133:22–134:21; *cf. Vivendi* I, 123 F. Supp. 3d at 436 (finding non-reliance where analyst primarily responsible for plaintiff's investments in Vivendi testified that "[h]e did not view any of the nine corrective disclosures as 'correcting' any misunderstanding he had about Vivendi's liquidity").

In sum, Lead Plaintiffs cannot credibly dispute that Mr. Rodrigues' testimony constitutes "a sufficiently clear showing of the [non-reliance] defense's applicability to the representative plaintiff[s]." *Bowling*, 2019 WL 1760162, at *4 (citation omitted). As such, "certification must be refused." *Id*.

## II. UNDISPUTED EXPERT EVIDENCE—INCLUDING FROM PLAINTIFFS' OWN EXPERT—CONFIRMS THAT PLAINTIFFS HAVE FAILED TO MEET THE REQUIREMENTS OF RULE 23(B)(3)

Lead Plaintiffs also have failed to meet the requirements of Rule 23(b)(3), as they have not "establish[ed] by a preponderance of the evidence a class-wide presumption of reliance by virtue of the presence of an efficient market critical to the fraud-on-the-market theory." *George*, 2013 WL 3357170, at *7. In order for the *Basic* presumption to apply (and therefore for reliance to be adjudged on a class-wide basis), Plaintiffs must show that Vale shares "traded in an efficient market." *Halliburton*, 573 U.S. at 278. Courts in this Circuit apply the factors outlined in *Cammer v. Bloom*, 711 F. Supp. 1264, 1275 (D.N.J. 1989) to evaluate market efficiency. *See, e.g.*, *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 177 (S.D.N.Y. 2012).

In opposing Lead Plaintiffs' Motion, Vale submitted an expert report from Dr. Walt Torous explaining that Lead Plaintiffs' proffered expert (Dr. David Tabak) had failed to demonstrate that Vale's securities traded in an efficient market during the proposed class period. *See* Expert Report of Dr. Walter Torous (Dkt. No. 148-1) ("Torous Report"). On July 19, 2019, Lead Plaintiffs *themselves* produced another expert report (addressing loss causation and damages) that confirms this fatal flaw in the analysis of their purported class certification expert. *See* Ex. B (Expert Report of Dr. John D. Finnerty). But the Court need not rely solely on this accidental confession by Lead Plaintiffs in denying their Motion. Dr. Torous has performed a supplemental analysis, which conclusively confirms that Dr. Tabak's model fails to establish market efficiency. *See* Ex. C (Supplemental Rebuttal Expert Report of Dr. Walter Torous).

Dr. Tabak analyzed the fifth *Cammer* factor (*i.e.*, whether a cause and effect relationship exists between the disclosure of new, material, company-specific news and Vale ADRs' price) to opine on whether Vale's shares traded in an efficient market. *See* Expert Report of David I. Tabak, Ph.D., September 14, 2017 (Dkt. No. 114-1) ("Tabak Report"). In so doing, Dr. Tabak characterized the fifth *Cammer* factor as "the most direct and important of the *Cammer* factors." *Id.* ¶ 31. Dr. Tabak analyzed the existence of a cause and effect relationship between relevant news and Vale ADR share price using an event study. *Id.* ¶¶ 31–38. "An event study examines the extent to which stock prices react to the release of new, material information (an "event"). . . . In an efficient market, stock prices should show statistically significant abnormal returns on days in which unexpected, material information is released into the market." *Freddie Mac*, 281 F.R.D. at 178.

Without any explanation or justification for his decision, Dr. Tabak chose to fit his statistical model using an estimation period (also known as a "control period") of one year *prior*

7

to the proposed class period. Tabak Report, Exs. 8b1 and 8b2. He then used the model to test price reaction on news and non-news dates *during* the proposed class period. *Id.* ¶¶ 35–36. Using this flawed approach, Dr. Tabak purported to find a statistically significant difference between the percentage of news days with a price reaction, as opposed to that of non-news days. Based on this defective analysis, he opined that there was "strong evidence" to satisfy the fifth *Cammer* factor. *Id.* ¶ 45.

"To defeat the presumption of reliance, defendants do not . . . have to show an inefficient market. Instead, they must demonstrate that plaintiffs' proffered proof of market efficiency falls short of the mark." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *20 (S.D.N.Y. Oct. 29, 2013). Here, Defendants' rebuttal report of Dr. Walt Torous exposed significant flaws in Dr. Tabak's methodology, finding, *inter alia*, that "Dr. Tabak adopted an estimation period for his event study that does not support any inferences concerning the behavior of Vale ADRs during the proposed class period given the substantially elevated volatility during the latter period as compared to the former." Opp. at 14–15 (citing Torous Report ¶¶ 31–35). As Dr. Torous explained, "[u]sing a low volatility estimation period . . . to detect abnormal returns in a high volatility period" may "lead[] to an incorrect inference that the excess returns were attributable to company-specific news." Torous Report, ¶ 31.

Of course, as noted above, Lead Plaintiffs' new expert Dr. Finnerty *agrees* with Defendants that Dr. Tabak's choice of the year prior to the proposed class period was an inappropriate estimation period, and concedes that "[u]sing the Proposed Class Period as the estimation period provides a better fit." Ex. B at ¶ 41. Indeed, Dr. Finnerty opines that the estimation period in Dr. Tabak's model "*will lead to biased test results because the variance will be understated.*" *Id.* (emphasis added). "This bias will result in excessive rejections of the null

hypothesis," which is, in other words, a false indicator of statistical significance. *Id.* Thus, Lead Plaintiffs' own expert now also confirms that Dr. Tabak's model produced biased results, thus precluding it as evidence to support a finding of market efficiency. *Id.* at ¶¶ 40–41.

Courts also have found the same methodology used by Dr. Tabak to be "deeply flawed." *See Freddie Mac*, 281 F.R.D. at 182. In *Freddie Mac*, the plaintiff's expert used an estimation period "of relative placidity" in order "to calculate his abnormal returns in the 'stormy ocean' of the last third of the class period." *Id.* at 179. The defendant's expert countered that "because [plaintiff expert's] control period was 'placid,' he found an excessive number of abnormal returns in the last third of the class period." *Id*. This is the exact point raised by both Dr. Torous and Dr. Finnerty, which the *Freddie Mac* court found to be "a convincing critique." *Id*.

Lead Plaintiffs declined to take on Dr. Torous' critique, and instead sought to shift the burden of proof to Defendants. *See* Reply at 8–9 ("Dr. Torous did not perform any such analysis and offers no opinion on whether or not [Dr. Tabak's model] actually does" erroneously "lead to finding a greater number of days with statistically significant excess returns"). Notwithstanding that "defendants do not . . . have to show an inefficient market," *IBEW*, 2013 WL 5815472, at *20, Dr. Torous has called Lead Plaintiffs' bluff. Indeed, Dr. Torous' supplemental report confirms that removing the results of the bias fundamentally changes the outcome of Dr. Tabak's analysis. *See* Ex. C at ¶¶ 20–32. Simply by using Dr. Finnerty's model in Dr. Tabak's analysis (and thus taking into account the increased volatility during the proposed class period), the difference in percentages of "news" and "non-news" dates that exhibited a statistically significant price reaction in Dr. Tabak's analysis is *not* statistically significant. Dr. Torous' analysis therefore affirmatively "demonstrate[s] that plaintiffs' proffered proof of market efficiency falls short of the mark." *IBEW*, 2013 WL 5815472, at *20; s*ee also Freddie Mac*, 281

9

F.R.D. at 180 (finding no market efficiency "because the percentage of days with abnormal returns on news and non-news days was not different at a statistically significant level").

Dr. Finnerty's opinions and Dr. Torous' subsequent analysis completely undermine Lead Plaintiffs' event study, thereby refuting Lead Plaintiffs' conclusions about market efficiency that depend on those "biased" event study results. Because Lead Plaintiffs have not demonstrated a cause and effect relationship between any company-specific news and movements in Vale ADRs' price, they have not demonstrated that Vale ADRs traded in an efficient market. And absent a showing that Vale shares traded in an efficient market, Plaintiffs also will be unable to prove that damages are calculable on a class-wide basis. Accordingly, the Court should deny Lead Plaintiffs' Motion for Class Certification. *See, e.g.*, *Freddie Mac*, 281 F.R.D. at 182 ("Because [plaintiff] has not shown by a preponderance of the credible evidence that the market . . . was efficient, the fraud on the market presumption of collective reliance does not apply" and the "motion for class certification is denied."); *George*, 2013 WL 3357170, at *9 (finding plaintiffs failed to carry their burden when their expert "did not perform analyses which are sufficiently supportive of CAAS securities trading in an efficient market").

## CONCLUSION

For the foregoing reasons, as well as those articulated in Defendants' Opposition, Defendants respectfully request that the Court deny Lead Plaintiffs' motion for class certification and appointment of class representatives and class counsel.

Dated: August 15, 2019　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP

　　　　　　　　　　　　　　　　　　　By:   */s/* Christopher M. Joralemon
　　　　　　　　　　　　　　　　　　　　　Randy M. Mastro
　　　　　　　　　　　　　　　　　　　　　Mark A. Kirsch
　　　　　　　　　　　　　　　　　　　　　Christopher M. Joralemon
　　　　　　　　　　　　　　　　　　　　　Mary Beth Maloney
　　　　　　　　　　　　　　　　　　　　　David M. Kusnetz

　　　　　　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　　　　　　New York, NY  10166-0193
　　　　　　　　　　　　　　　　　　　　　Telephone: 212.351.4000
　　　　　　　　　　　　　　　　　　　　　Facsimile: 212.351.4035
　　　　　　　　　　　　　　　　　　　　　CJoralemon@gibsondunn.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Vale S.A., Luciano*
　　　　　　　　　　　　　　　　　　　　　*Siani Pires, and Gerd Peter Poppinga*